**DAYTON, Appellant,**

v.

**HEWITT, Appellee.**

[Cite as *Dayton v. Hewitt*, 153 Ohio App.3d 695, 2003-Ohio-4324.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 19650.

Decided Aug. 15, 2003.

Patrick J. Bonfield, John J. Danish, and Tracy L. Bradford, Assistant City Attorneys, for appellant.

Terry W. Posey and John A. Herndon, for appellee.

WOLFF, Judge.

{¶ 1} The city of Dayton appeals from a judgment of the Montgomery County Court of Common Pleas, which affirmed the decision of the Dayton Civil Services Board that Timothy A. Hewitt had not violated the city's residency requirement for employees.

{¶ 2} Hewitt worked for the city from 1983 until June 1994 at the Dayton Human Rehabilitation Center ("DHRC"). The city received an anonymous tip that Hewitt was not living in the city, whereupon it hired a private investigation company, Professional Security Associates ("PSA"), to determine Hewitt's actual residence. Hewitt had claimed to live in the city at 2508 Newcastle with a friend, but his wife and daughter lived on a family farm outside the city, and it was undisputed that Hewitt spent a great deal of time working at the farm. PSA observed Hewitt's activities on five randomly chosen days over several weeks, paying special attention to the farm, DHRC, and the vehicles Hewitt was known to drive. It also checked the Newcastle address at various other times to see if any of Hewitt's cars were there. Based on PSA's report, it appeared that Hewitt lived at the farm and did not spend any significant amount of time at the Newcastle address.

{¶ 3} In June 1994, the city charged Hewitt with failing to reside within the city. A hearing was held on the charge, and Hewitt was discharged as a result of the hearing. Hewitt filed an appeal with the board. Several continuances were granted at Hewitt's request, including a request that his charge not be adjudicated until an appeal of a charge against his father, also for violating the city's residency requirement, was resolved. These continuances resulted in a substantial delay in the case. The hearing before the board was held in September 2000. The board disaffirmed the city's termination of Hewitt's employment. Specifically, the board found that the results of PSA's surveillance had been unreliable and that other evidence offered by the city was not necessarily incriminating. The city appealed to the Montgomery County Court of Common Pleas pursuant to R.C. Chapter 2506. The trial court initially referred the matter to a magistrate but subsequently decided to disregard that step in the review process because it had not been warranted. Thus, the trial court reviewed the board's decision without regard to the magistrate's decision. The trial court upheld the board's decision.

{¶ 4} The city now appeals to this court, raising two assignments of error. Our discussion of the first assignment is dispositive of the appeal, so we will not address the second assignment.

{¶ 5} "I. The trial court abused its discretion in finding that appellee had not violated the city of Dayton's residency requirement."

{¶ 6} The primary issue in this case is whether the evidence established that Hewitt had violated the city's residency requirement. The residency requirement is set forth in the city charter as follows: "All employees in the Civil Service of the City of Dayton, appointed after the effective date of this Charter Section, must and shall be actual residents of and physically live in the City of Dayton at the time of their appointment and shall continue to be actual residents and physically live in the City of Dayton during the term of their employment." The penalty for violating the provision is discharge.

{¶ 7} In *Harmon v. Dayton* (July 20, 2001), Montgomery App. No. 18725, 2001 WL 817813, we interpreted the provision requiring city employees to "be actual residents of and physically live in" the city. We held that the requirement demanded "much more from an employee than simply renting an apartment in the city while regularly living elsewhere. Specifically, the standard requires a city employee to spend significant parts of each day at the location for purposes consistent with residence." Id. In *Harmon*, we considered the following factors, among others, in determining whether the employee's activities at the city address were consistent with residence: having telephone service, receiving mail and billings, registering to vote, entertaining friends, eating meals, and maintaining furniture and clothes. Id.

{¶ 8} The decisions of the board and the trial court focused on the reliability of the private investigators' surveillance of Hewitt and speculation that loan documents filed by Hewitt might have listed the farm as his address because it was his business address, rather than his residence. Although the basis for the board's and trial court's scepticism toward the city's evidence is not apparent to us from the record, we do not find this evidence to be pivotal. Rather, we look to the testimony offered by Hewitt himself, which was the strongest evidence in support of his residency in the city. In our view, this evidence, even if fully credited, could not reasonably be found to establish residency in the city of Dayton under the standard set forth in *Harmon*.

{¶ 9} Hewitt did not own the house on Newcastle. According to his own testimony, he rarely did more than sleep there. During the week, he would leave before eating breakfast at 5:00 or 5:30 a.m. each day and head to the farm. He would arrive at the farm by 6:00 a.m. and work there until it was time to go to the DHRC at 7:00 or 7:30 a.m. After work each day, he would return to the farm and work there until somewhere between 8:00 p.m. and 12:00 a.m., depending on the season. It apparently was not uncommon for him to be at the farm until 10:00 p.m. or later. Hewitt testified that he ate dinner at the farm or at his · mother's house. It is undisputed that Hewitt's wife and child lived solely at the

farm throughout the period in question and that his weekends were spent almost entirely at the farm. Hewitt also admitted that he stayed overnight at the farm a couple of nights a week. Hewitt used call forwarding to receive his telephone calls. He testified that he showered at the house on Newcastle "once in a while" but also showered at the farm, at work, and at his mother's house. When asked about doing laundry at Newcastle, he stated that he "did a little bit but it was mostly just what little bit of underwear that [he] had."

{¶ 10} Although Hewitt received mail, was occasionally picked up or dropped off, and kept some clothes at the house on Newcastle, none of the evidence presented establishes that Hewitt had the kind of connection with the Newcastle house that the city's residency rule requires. As we stated in *Harmon*, the city employee is required "to spend significant parts of each day at the location for purposes consistent with residence." Notwithstanding the substantial deference that we are required to give to the trial court's findings in an administrative appeal, in our view the evidence presented in this case simply cannot be reasonably construed in such a manner as to find the residency requirement to be satisfied. Therefore, the trial court abused its discretion in affirming the decision of the board.

{¶ 11} The first assignment of error is sustained.

{¶ 12} The judgment of the trial court and the decision of the board will be reversed.

Judgment reversed.

BROGAN and FREDERICK N. YOUNG, JJ., concur.